

EOD
02/21/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SCOTT JAMES UNCLEBACH and | § | Case No. 05-40880 |
| LINDA DARLENE UNCLEBACH, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| | § | |
| THE VILLAGES OF ALLEN | § | |
| TOWNHOMES, LTD., | § | |
| | § | Adv. Proc. No. 05-4110 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SCOTT JAMES UNCLEBACH, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

This matter is before the Court following the trial of the COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY (the "Complaint") filed by the Villages of Allen Townhomes, Ltd. (the "Plaintiff") against Scott James Unclebach (the "Defendant"). By the Complaint, the Plaintiff seeks a judgment that the Defendant's obligation to the Plaintiff is non-dischargeable under 11 U.S.C. §523(a)(2) and/or (a)(4). Upon consideration of the pleadings, the evidence presented, and the arguments made at trial, the Court makes the following findings of fact and conclusions of law.

---

[1] These Findings of Fact and Conclusions of Law are not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion or the law of the case, or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

## I. FINDINGS OF FACT

1.	The Defendant and his wife were the president and secretary, respectively, of two construction companies, Rey-Bach, Inc. ("Rey-Bach") and CSF Mechanical Corporation ("CSF"). The Defendant was the sole owner of Rey-Bach and CSF at all relevant times. The Defendant also had an ownership interest in IM Outdoors, Inc., which operated a website, and Monarch Shadows, Inc., which was attempting to develop certain real estate in Colorado.

2.	Prior to 2000, the Defendant had a business partner with an ownership interest in Rey-Bach and CSF. In or around January 2000, the Defendant paid his business partner approximately $300,000.00 to buy out his interest in Rey-Bach and CSF. The Defendant subsequently suffered several financial setbacks, including a loss of around $400,000.00 on the stock market due to bad investments, and a loss of more than $250,000.00 on a construction project in Galveston, Texas.

3.	On or about October 25, 2001, Rey-Bach entered into a contract with the Plaintiff (the "Construction Contract") to construct several buildings at 706 S. Jupiter Road in Allen, Texas (the "Project"). Rey-Bach was replacing a prior contractor and taking over the Project. The Project was one phase of a much larger construction project, and the Defendant hoped to work with the Plaintiff on the other phases.

4.	Rey-Bach and CSF were working on several other construction projects at the time the Defendant executed the Construction Contract. Rey-Bach and CSF were owed monies for those projects. The Defendant estimated that Rey-Bach was owed several hundred thousand dollars in receivables as of May 2002.

5.	Rey-Bach was experiencing cash flow problems in October 2001 due, in

2

part, to the construction project in Galveston, Texas. The Defendant did not inform the Plaintiff of Rey-Bach's cash flow problems when he executed the Construction Contract.

6. The Defendant was an experienced contractor who had always made money on his projects, with the exception of the project in Galveston, Texas. He was working on several other construction projects and submitting bids for more work at the time he executed the Construction Contract, and he expected that Rey-Bach and CSF would continue as successful construction businesses. The Defendant intended to complete the Project and Rey-Bach had the ability to complete the Project at the time the Construction Contract was executed.

7. Rey-Bach did not obtain, and the Plaintiff did not require, a performance bond for the Project. In contrast, the Plaintiff had required Rey-Bach to obtain a performance bond in connection with a prior project for the Plaintiff.

8. In general, as part of obtaining a performance bond, both the Defendant's certified public accountant and the bonding company would audit the financial statements of the Defendant and Rey-Bach. In particular, they would verify all receivables, funds on deposit in banks, and the amounts of any outstanding loans.

9. During its work on the Project, Rey-Bach made applications for "progress payments." These were portions of Rey-Bach's fee for the Project paid over the course of the Project as it was completed. Rey-Bach used part of these progress payments to pay its overhead and part to pay its suppliers, laborers and subcontractors.

10. Sometime after the execution of the Construction Contract, Rey-Bach made its first written application for a progress payment from the Defendant.[2] The Defendant signed the application on Rey-Bach's behalf. In the application, the

---

[2] The Plaintiff did not introduce the Defendant's applications for payment into evidence.

3

Defendant represented that all prior subcontractor claims had been paid to that point on the Project. This was superfluous, as no prior claimants would have been due payment until Rey-Bach received its first progress payment from the Plaintiff. The Plaintiff made the first progress payment to Rey-Bach in the amount of $83,007.00 on or about January 29, 2002.

11. Sometime after Rey-Bach received its first progress payment, Rey-Bach made its second written application for a progress payment in connection with the Project. The Defendant signed the application on Rey-Bach's behalf. In the application, the Defendant represented that all prior subcontractor claims had been paid to that point on the Project. The Plaintiff made the second progress payment to Rey-Bach in the amount of $158,000.00 on or about March 28, 2002.

12. Sometime after it received its second progress payment, Rey-Bach made its third written application for a progress payment from the Plaintiff in connection with the Project. The Defendant signed the application on Rey-Bach's behalf. In the application, the Defendant represented that all prior subcontractor claims had been paid to that point on the Project. The Plaintiff made the third progress payment to Rey-Bach in the amount of $139,788.00 on or about April 30, 2002.

13. The three progress payments Rey-Bach received from the Plaintiff totaled $380,795.00.

14. Rey-Bach paid its laborers, suppliers and subcontractors on the Project a

total of $163,489.84 from the first two progress payments.[3]  Rey-Bach also used the funds from the first two progress payments to pay insurance and other overhead costs.

15.   With respect to the first two progress payments, the Defendant testified that he used the funds to pay all the claims of his suppliers and subcontracts in full on the Project.  Although the Plaintiff suggested in its arguments that the Defendant did not, in fact, use the funds to pay all prior claims relating to the Project, the Plaintiff failed to substantiate its argument with any specific evidence of unpaid claimants.

16.   Rey-Bach failed to pay its creditors on the Project beginning with its third progress payment of $139,788.00 on or about April 30, 2002.  The Defendant used the third progress payment to pay his laborers, suppliers and other creditors on his companies' various projects, but the third progress payment was not necessarily used to pay creditors on the Plaintiff's Project.  Those material suppliers for the Project who were not paid began filing materialman's liens on the Project on or around May 15, 2002.

17.   On or around May 20, 2002, Rey-Bach prepared an incomplete or "blank" pay application for $74,332.00.  It was customary for the Defendant to send blank pay applications to the Plaintiff for review before submitting the final, signed progress payment applications.  However, a final, certified application for a $74,332.00 progress payment was never submitted to the Plaintiff, and the Defendant did not receive any payment as a result of it the "blank" application.

18.   Rey-Bach did not submit any final, completed progress payment applications to the Plaintiff after April 30, 2002.  Rey-Bach was not paid for any work it

---

[3] The only financial records the Defendant retained regarding the Project was a computer printout of the total amounts paid to creditors.  The Defendant lost possession and control of most of his records when the bonding companies took over the Defendant's businesses, as discussed below.  Other records were lost when the Defendant moved his office from Sherman, Texas to McKinney, Texas and, finally, to Frisco, Texas.

performed on the Project after April 30, 2002.

19. In February, March and April of 2002, the Defendant was aware that Rey-Bach and CSF were experiencing financial difficulties. However, the Defendant continued to believe that Rey-Bach could complete the Project until sometime late in May of 2002.

20. On or about May 20, 2002, when it became clear to the Defendant that Rey-Bach did not have the cash flow necessary to complete the Project (or any of Rey-Bach's other projects), he notified the Plaintiff. He also notified the bonding companies for the various construction projects on which Rey-Bach and CSF were working. At that point, the bonding companies took control of most or all of Rey-Bach's assets, including its accounts receivable, and Rey-Bach ceased work on the Plaintiff's Project.

21. On or about May 22, 2002, the Plaintiff sent the Defendant a letter advising the Defendant that the Plaintiff had received certified letters from subcontractors alerting the Plaintiff that they had not been paid for their services. The Plaintiff notified the Defendant that Rey-Bach would be terminated from the Project unless the Defendant paid all subcontractors in full within seven days of the date of the letter.

22. In December 2002, the Plaintiff filed suit against the Defendant in the 15th Judicial District, Grayson County, Texas (the "State Court Lawsuit"). The Plaintiff sought a judgment against the Defendant in the amount of approximately $400,000.00.

23. Rey-Bach and CSF filed separate petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on May 6, 2003.

24. The Defendant and his wife initiated the joint bankruptcy case associated with this adversary proceeding (the "Main Case") by filing for a petition for relief under

6

Chapter 7 of the Bankruptcy Code on February 25, 2005 (the "Petition Date"). The Defendant listed the Plaintiff's State Court Lawsuit in his bankruptcy schedules as a unsecured, non-priority debt in the amount of $400,000.00.

25. On June 3, 2005, the Plaintiff initiated this adversary proceeding by filing the Complaint. The Plaintiff thereby seeks a judgment that the Defendant is indebted to it in the amount of $400,000.00, plus reasonable attorneys' fees and costs. The Plaintiff requests this Court to declare the Defendant's debt to the Plaintiff non-dischargeable under §523(a)(2) and/or (a)(4) of the Bankruptcy Code.

26. In his Answer to the Complaint, the Defendant denies that he owes the Plaintiff any amount. The Defendant also denies committing any acts that would render any debt to the Plaintiff non-dischargeable.

27. The trial took place on November 30, 2006 and December 11, 2006. The only two witnesses called were the Defendant and Mindy Breed. Ms. Breed testified briefly regarding whether the Plaintiff typically requested performance bonds from its contractors.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction

28. The Court has jurisdiction to issue a final judgment on the causes of action and issues raised in this adversary proceeding pursuant to 28 U.S.C. §§1334(a) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

### B. Burden of Proof

29. The Plaintiff bears the burden of proving the non-dischargeability of a debt under §523 of the Bankruptcy Code by a preponderance of the evidence. *Grogan v.*

7

*Garner*, 498 U.S. 279, 291 (1991). Should an objecting party establish a *prima facie* case supporting its challenge to dischargeability of a debt, the burden shifts to the debtor-defendant to prove that its actions (or inactions) are not prohibited by §523(a). *See Everspring Enterprises, Inc. v. Wang (In re Wang)*, 247 B.R. 211, 214 (Bankr. E.D.Tex. 1994). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start. *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).

### C. Section 523(a)(2)(A)

30.  Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge debts accrued "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. §523(a)(2)(A).

31.  Although other circuits have applied a uniform standard to all §523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" on the one hand and "false pretenses and false representations" on the other. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

32.  To prove that a debt is non-dischargeable as having been obtained by false pretense or representation, a creditor must establish (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, and (iii) that was relied upon by the creditor. *See Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); *RecoverEdge L.P.*, 44 F.3d at 1292-93. "'False pretenses' and 'false representations'

8

both involve intentional conduct intended to create and foster a false impression." *Still v. Patten (In re Patten)*, 225 B.R. 211, 215 (Bankr. D. Ore. 1998) (citation omitted). "The distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement." *Id*. (citations omitted).

33. Actual fraud requires the additional proof of the debtor's intent to deceive and a loss by the creditor which is proximately caused by the fraud. *RecoverEdge L.P.*, 44 F.3d at 1293.

### 1. The Construction Contract

34. Here, the Plaintiff complains that the Defendant knew when he executed the Construction Contract that Rey-Bach never intended to complete the Project. The Plaintiff, however, failed to establish that the Defendant fraudulently misrepresented Rey-Bach's intention to perform the Construction Contract. To the contrary, the Defendant credibly testified that he not only intended to complete the Project, but to work on related construction for the Plaintiff. Thus, with respect to the Defendant's alleged misrepresentation regarding his intent to complete the Project, the Court concludes the Plaintiff failed to establish an essential element required for it to prevail on a §523(a)(2)(A) cause of action.

35. The Plaintiff also complains that, prior to May of 2002, the Defendant became aware that Rey-Bach would not complete the Project but did not so inform the Plaintiff. This, the Plaintiff argues, constitutes a misrepresentation for the purposes of §523(a)(2)(A). In his closing argument, the Plaintiff's counsel stated that the Defendant's misrepresentation of Rey-Bach's financial *ability* and *intent* to complete the

9

Project was ongoing from the day the contract was signed and that the misrepresentation continued daily.

36. With respect to the Plaintiff's argument regarding the Defendant's *ability* to complete the Project, the Plaintiff has failed to allege grounds for a judgment of non-dischargeability under §523(a)(2)(A). Section 523(a)(2)(A) expressly excludes from its scope "a statement respecting the debtor's ... financial condition." 11 U.S.C. §523(a)(2)(A). *See also In re Mercer*, 246 F.3d 405.

37. With respect to the Defendant's *intent* to complete the Project, the Plaintiff's continuing representation argument "unduly strains the language" of the Construction Contract. *See In re Hollister*, 13 B.R. 178, 185 (Bankr. N.D. Tex. 1981). The Defendant signed the Construction Contract with the present intent to complete the Project. "The fact that Defendant subsequently breached his promise does not make the debt non-dischargeable under a fraud theory." *Id.* Thus, the Plaintiff has failed to establish by a preponderance of the evidence that the Defendant committed a fraud within the meaning of §523(a)(2)(A) of the Bankruptcy Code.

## 2. The Payment Applications

38. The Defendant testified that he made two representations in his applications to the Plaintiff for progress payments,. First, the Defendant represented that he and his subcontractors had completed work for which payment was due. Second, Defendant represented and certified that all amounts previously paid to the Defendant had been issued to suppliers and laborers on the Project as set forth in the prior application for payment.

39. The Plaintiff has not alleged that the Defendant misrepresented that Rey-

10

Bach had completed the work covered by any of the payment applications. Rather, the Plaintiff asserts that the Defendant falsely represented that he had paid the suppliers and laborers who had worked on the Project.

40. The Plaintiff failed to establish any particular misrepresentation in the three applications for payment submitted by the Defendant. The applications for payment were not introduced into evidence. Thus, while the Plaintiff argued, generally, that not all suppliers and subcontractors were paid, there was no evidence that (i) the applications for payment included a representation that a particular creditor was paid and (ii) that such creditor was not paid.

41. The Plaintiff failed to establish by a preponderance of the evidence that the Defendant falsely represented to the Plaintiff that he had used the funds he received as a result of the first two payment applications to pay all prior lien claims in full.

42. With respect to the funds received as a result of the third payment application, the Defendant admitted that not all of the money went to creditors on the Project. The Plaintiff, however, failed to show that the Defendant made any misrepresentation in order to obtain the third progress payment. Further, since the Defendant never submitted another final application for payment to the Plaintiff, the Defendant never certified to the Plaintiff that he had issued the funds received as a result of the third payment application to the suppliers and laborers on the Project.[4]

### 3. Justifiable Reliance

43. To establish fraud, or false pretenses, or a false representation, a plaintiff must show that its reliance on the defendant's representations was justifiable as well as

---

[4] With respect to the incomplete or "blank" application from May 2002, the Plaintiff failed to establish that this application was ever submitted to it. The Plaintiff merely used a copy of the incomplete application from May 2002 to "impeach" the Defendant.

11

actual. *See, e.g., Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir.1993). "'Justifiable reliance' represents a lesser burden on fraud plaintiffs than what 'reasonable reliance' might imply." *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir. 1993). Reliance is justifiable if its falsity is not ascertainable upon a cursory examination or investigation. *Field v. Mans*, 516 U.S. 59, 71 (1995).

44. In this case, even if the Plaintiff had shown a material misrepresentation by the Defendant, the Plaintiff failed to establish justifiable reliance on any such misrepresentation. The Plaintiff failed to conduct even a cursory investigation of the Defendant's or Rey-Bach's financial condition prior to the execution of the Construction Contract. This is especially important because the Project was not bonded and the Plaintiff was relying solely on Rey-Bach to pay the laborers, suppliers and other creditors for the Project. Although the Plaintiff may have acquired some knowledge of the Defendant's and Rey-Bach's financial condition in connection with the performance bond on Rey-Bach's other project with the Plaintiff, the Plaintiff failed to establish what information it obtained or whether the information was current at the time of the execution of the Construction Contract. Further, having previously required a bond from the Defendant on the other project, the Plaintiff's failure to investigate the Defendant's and Rey-Bach's financial condition prior to entering into the Construction Contract was not justified.

### D. Section 523(a)(2)(B)

45. Section 523(a)(2)(B) is a "close statutory companion" to §523(a)(2)(A). *Field v. Mans,* 516 U.S. 59 (1995). Prior to the enactment of the Bankruptcy Code in

1978, §17(a)(2) of the Bankruptcy Act provided in pertinent part as follows:

> (a) A discharge in bankruptcy shall release a bankruptcy from all his provable debts … except such as … (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance on a materially false statement in writing respecting his financial condition made or published or caused to be published in any manner whatsoever with intent to deceive …..

Act of July 12, 1960, Pub.L. 86-621, 74 Stat. 409. In 1978, Congress rewrote the provision as set out above and codified it as §523(a)(2)(A) and (a)(2)(B) of the Bankruptcy Code.

46. A debt is non-dischargeable under the current §523(a)(2)(B) of the Bankruptcy Code if the Defendant obtained money, property, services or an extension of credit by use of a statement in writing that (1) is materially false; (2) respecting the Defendant's or an insider's financial condition; (3) on which the Plaintiff reasonably relied; and (4) that the Defendant caused to be made or published with intent to deceive. 11 U.S.C. §523(a)(2)(B).

47. Courts disagree about what degree of information is necessary for a writing to constitute a "statement in writing respecting the debtor's or an insider's financial condition" within the meaning of §523(a)(2)(B). *See Cadwell v. Joelson (In re Joelson)*, 427 F.3d 700, 705 (10th Cir. 2005) (discussing different approaches). Some courts take a liberal approach and define a statement respecting the debtor's financial condition as "any communication that has a bearing on the debtor's financial position." *Id*. (citation omitted). Others limit the scope of the phrase to mean "any communication that presents an overall picture of the debtor's financial position." *Id*. "This interpretation limits statements 'respecting the debtor's … financial condition' to

13

communications that purport to state the debtor's overall net worth, overall financial health, or equation of assets and liabilities." *Id*. (citation omitted).

48. Although the Fifth Circuit has not expressly addressed this issue, the Fifth Circuit appears to take a narrow approach to §523(a)(2)(B). The Fifth Circuit has described materially false statements under §523(a)(2)(B) as follows:

> A materially false statement is one that "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *In re Nance,* 70 B.R. 318, 321 (Bankr. N.D. Tex. 1987), citing *In re Denenberg,* 37 B.R. 267 (Bankr. D. Mass. 1983). Further, in determining whether a false statement is material, a relevant although not dispositive inquiry is "whether the lender would have made the loan had he known the debtor's true situation." *In re Bogstad,* 779 F.2d 370, 375 (7th Cir. 1985). Finally, it is well-established that writings with pertinent omissions may qualify as "materially false" for purposes of § 523(a)(2)(B). *In re Biedenharn,* 30 B.R. 342 (Bankr. W.D. La. 1983).

*Jordan v. Southeast Nat'l Bank (Matter of Jordan),* 927 F.2d 221, 224 (5th Cir. 1991), overruled on other grounds by *Coston v. Bank of Malvern* (*Matter of Coston*), 991 F.2d 257 (5th Cir. 1993).

49. In this case, the Plaintiff argues that the Defendant made written misrepresentations of his and/or Rey-Bach's financial condition (i) at the time of the Construction Contract by signing the Construction Contract, and (ii) at the time of each progress payment application by signing the applications. However, the Construction Contract and the payment applications did not give an overall picture of the financial health or net worth of the Defendant or Rey-Bach. Further, the Defendant was not seeking a loan or an extension of credit from the Plaintiff – he was seeking to be paid for work that he and his subcontractors had already performed.

50. Even if some or all of the documents could be construed as statements

with respect to the Defendant's or Rey-Bach's financial condition, the Plaintiff failed to establish the requisite intent to deceive by the Defendant. The Defendant believed that Rey-Bach could and would complete the Project when he signed the Construction Contract. It did not become clear to the Defendant that Rey-Bach could not pay its subcontractors on the Project until after he submitted his third application for a progress payment to the Plaintiff. The Defendant promptly notified the Plaintiff and the bonding companies for his various construction projects. The Defendant did not make any misrepresentation to the Plaintiff of his or Rey-Bach's intent to complete the Project, and the Defendant did not intend to deceive the Plaintiff with respect to any of the applications for payment.

51. Even if the Court were to find a misrepresentation and intent to deceive by the Defendant, the Plaintiff must establish reasonable reliance. A bankruptcy court's determination regarding the reasonableness of a creditor's reliance under §523(a)(2)(B) of the Bankruptcy Code is a matter of fact. *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 260 (5th Cir. 1993). As previously discussed, reasonable reliance is a more stringent level of reliance than justifiable reliance. *See Beijing Metals,* 993 F.2d at 1186. Whether a creditor's reliance on a misrepresentation is reasonable is to be determined from the totality of the circumstances. *Young v. Nat'l. Union Fire Ins. Co. of Pittsburgh, PA (In re Young)*, 995 F.2d 547, 549 (5th Cir. 1993).

52. In this case, the Plaintiff did not require the Defendant to obtain a performance bond for the Project. This meant that any unpaid laborers or suppliers would look to the Plaintiff for payment, rather than to a bonding company. The Plaintiff failed to show that it conducted any investigation at all into Rey-Bach's or the

Defendant's financial condition or any other circumstances bearing on Rey-Bach's ability to complete the Project at any relevant time. Under the circumstances, any reliance by the Plaintiff on the Defendant's alleged misrepresentations in the Construction Contract and the payment applications was not reasonable.

53. For all the foregoing reasons, judgment will be entered in favor of the Defendant on the Plaintiff's §523(a)(2)(B) cause of action.

**E. Section 523(a)(4): Fraud or Defalcation While Acting in a Fiduciary Capacity**

54. Section 523(a)(4) of the Bankruptcy Code excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. §523(a)(4).

55. Defalcation is a willful neglect of duty. *See Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001). A debtor may be guilty of defalcation regardless whether or not accompanied by fraud or embezzlement. *Id*. Unlike fraud, defalcation does not require actual intent. The defalcation determination turns on the issue of whether a breach of fiduciary duty was "willful." *See Moreno v. Ashworth,* 892 F.2d 417, 421 (5th Cir.1990). The Fifth Circuit describes the "willful neglect" of a fiduciary duty as "essentially a reckless standard." *Schwager v. Fallas*, 121 F.3d 177, 185 (5th Cir. 1997).

56. Under §523(a)(4), the meaning of "fiduciary" is narrower than it is under general common law. The Fifth Circuit recently discussed the concept of a fiduciary under §523(a)(4) in the following terms:

> [Under §523(a)(4), "fiduciary" is limited to instances involving express or technical trusts. The purported trustee's duties must, therefore, arise independent of any contractual obligation. The trustee's obligations, moreover, must have been imposed prior to, rather than by virtue of, any

> claimed misappropriation or wrong. Constructive trusts or trusts *ex malificio* thus also fall short of the requirements of §523(a)(4).
>
> Statutory trusts, by contrast, can satisfy the dictates of §523(a)(4). It is not enough, however, that a statute purports to create a trust: A state cannot magically transform ordinary agents, contractors, or sellers into fiduciaries by the simple incantation of the terms "trust" or "fiduciary." Rather, to meet the requirements of §523(a)(4), a statutory trust must (1) include a definable *res* and (2) impose "trust-like" duties.

*Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 - 43 (5th Cir. 1998).

57. In this case, the Plaintiff, as the owner of the Project, does not have standing under and is not a beneficiary of the Texas Trust Fund Statute. *See* TEX. PROP. CODE ANN. §§162.001, et seq. As explained in *Lampman v. Lee (In re Lee)*, 230 B.R. 810, 813 (Bankr. N.D. Tex. 1999):

> The statutes make payments to a contractor trust funds for the benefit of any laborer or materialman who furnishes labor or material on the project. The obligations protected by the statute are those incurred by the contractor for labor or materials furnished in the direct prosecution of the work. Defalcation occurs when the contractor intentionally, knowingly, or with intent to defraud, diverts the trust funds without paying the obligations. Therefore, the beneficiaries of the statute are the unpaid laborers and materialmen, not the owners who paid funds to the contractor. In this case, the [owners] who paid funds to the contractor, have no claim under the trust funds statute.

(internal citations omitted). *See also* TEX. JUR. 3d *Mechanics' Liens* §162 (discussing who are trustees and who are beneficiaries of the Trust Fund Statute).

58. Additionally, the Fifth Circuit has held that the Texas Trust Fund Statute does not create "the sort of true trust required for application of the debt discharge exception of section 523(a)(4)." *Matter of Boyle,* 819 F.2d 583, 589 (5th Cir. 1987). Indeed, in his closing argument, the Plaintiff's counsel conceded that any duty from the Defendant to the Plaintiff was "perhaps not a fiduciary duty."

59. The Plaintiff nonetheless argued that a "modified" fiduciary duty exists

17

with respect to the payments the Plaintiff made to the Defendant. The Plaintiff cited no authority in support of its argument, but asserted that, in light of the Defendant's failure to retain any records, the Defendant had the burden to explain how he distributed the progress payments. It appears from the authority cited in the Plaintiff's proposed "Findings of Fact and Conclusions of Law" that the Plaintiff's argument regarding the Defendant's burden of proof is based on cases in which the court found a fiduciary duty to exist. *See In re Storie*, 216 B.R. 283, 288-89 (10th Cir. BAP 1997).

60. However, in this case, the Plaintiff failed to establish a fiduciary relationship with the Defendant within the meaning of §523(a)(4).

61. As the Court has previously discussed, the Plaintiff also failed to establish that the Defendant had any actual intent to defraud the Plaintiff.

62. Finally, with respect to the Plaintiff's claim for defalcation, the mere fact that the Defendant failed to complete the Project or to pay all claims relating to the Project does not establish mental culpability or make his obligations to the Plaintiff non-dischargeable.

63. For all the foregoing reasons, the Plaintiff has failed to establish grounds for a judgment of non-dischargeability under §523(a)(4) based on fraud or defalcation while acting in a fiduciary capacity.

### III. CONCLUSION

64. The Plaintiff has failed to prove, by a preponderance of the evidence, that any debt that the Defendant owes to it should be excepted from discharge under 11 U.S.C. §523(a)(2) or (a)(4). A separate judgment will be entered consistent with these findings of fact and conclusions of law.

65. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

Signed on 2/21/2007

*Brenda T. Rhoades* MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE